# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| APRIL BROWN, | : |
| Plaintiff, | : |
| vs. | : CA 21-0052-MU |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | : |
| Defendant. | : |

## MEMORANDUM OPINION AND ORDER

Plaintiff April Brown brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 20 & 21 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the oral arguments of the parties on November 18, 2021, the Court concludes that the Commissioner's decision denying benefits is due to be and hereby is affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 20 & 21 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

## I. Procedural Background

Plaintiff protectively filed an application for supplemental security income benefits on February 11, 2019, alleging disability beginning on March 31, 2018. (*See* Doc. 13, PageID. 244-53). Brown's claim was initially denied on June 6, 2019 (*id.,* PageID. 166-70) and, following Plaintiff's July 11, 2019 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 173-74), a hearing was conducted before an ALJ on June 23, 2020 (*id.,* PageID. 97-124). On July 1, 2020, the ALJ issued a decision finding claimant not disabled and therefore, not entitled to supplemental security income benefits. (*Id.,* PageID. 66-90). More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Brown retains the residual functional capacity to perform light work, with limitations (*id.,* PageID. 75) and can perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*see id.,* PageID. 89; *compare id. with* PageID. 116-19). On September 2, 2020, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 335-39); the Appeals Council denied Brown's request for review on December 16, 2020 (*id.,* PageID. 52-54). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to major depressive disorder, generalized anxiety disorder, panic disorder, mild intellectual disability with functional illiteracy, learning disorder, PTSD, ADHD, hypertension, questionable seizure-like spells, and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2.     The claimant has the following severe impairments: major depressive disorder (hereinafter "MDD" or "depression"), generalized anxiety disorder (hereinafter "GAD" or "anxiety"), panic disorder, mild intellectual disability with functional illiteracy, learning**

**disorder, posttraumatic stress disorder (hereinafter "PTSD"), attention deficit hyperactivity disorder (hereinafter "ADHD"), hypertension, questionable seizure-like spells, and obesity (20 CFR 416.920(c)).**

. . .

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

. . .

**4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following. This claimant cannot climb ladders, ropes, or scaffolding. She cannot work at unprotected heights and/or around hazardous machinery. She cannot work in extremes of temperature or humidity. She would require a job where reading and writing were not essential components of the job. Job instructions would need to be given verbally or demonstrated, rather than in writing. She can understand, remember, apply, and carry out simple repetitive tasks and could persist at that level of complexity for eight hours a day five days a week consistently. She will avoid more than casual or non-transactional interactions with the general public. She can occasionally interact with coworkers and supervisors for non-collaborative work defined as 'work not requiring working in concert with others to achieve a desired outcome or result' but not precluding assembly work where each worker has his or her own individual workspace. She can adapt to routine changes in the work setting that are gradually introduced and occasional in nature.**

. . .

**5. The claimant is unable to perform any past relevant work (20 CFR 416.965).**

. . .

**6. The claimant was born on October 26, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

3

**7.     The claimant is illiterate and is able to communicate in English (20 CFR 416.964).**

**8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**

. . .

**10.     The claimant has not been under a disability, as defined in the Social Security Act, since February 11, 2019, the date the application was filed (20 CFR 416.920(g)).**

(Doc. 13, PageID. 69, 75-76, 88 & 89) (emphasis in original).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The

---

[2]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

4

claimant bears the burden at the fourth step of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history.  *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from

---

[3]   This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Brown advances one reason the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in failing to find, at step three of the sequential evaluation process, that Plaintiff's impairment or combination of impairments meet or medically equal the criteria of Listing 12.05B.

At the outset, this Court notes that in this circuit Brown bears the burden of proving that she has an impairment which meets or is medically equivalent to a listed impairment. *Frame v. Commissioner, Social Security Administration,* 596 Fed.Appx. 908, 910 (11th Cir. Jan. 13, 2015). "To prevail at step three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that her impairment meets or medically equals a listed impairment. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed. 2d 967 (1990). 'For a claimant to show that h[er] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Id.,* quoting *Sullivan, supra.* Once an impairment is shown to meet or medically equal a listed impairment, a claimant is "conclusively presumed to be disabled based on . . . her medical condition." *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997).

6

Listing 12.05B requires the following, that is, it is "[s]atisfied by 1, 2, and 3 (see 12.00H): 1. Significantly subaverage general intellectual functioning evidenced by a or b: a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: a. Understand, remember, or apply information (see 12.00E1); or b. Interact with others (see 12.00E2); or c. Concentrate, persist, or maintain pace (see 12.00E3); or d. Adapt or manage oneself (see 12.00E4); and 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22."  20 CFR Part 404, Subpart P, App. 1, § 12.05B of the Listings.

Here, the ALJ determined that the evidence demonstrates that Brown's intellectual disorder began prior to her attainment of age 22 (*see* Doc. 13, PageID. 74 (noting Plaintiff's "highly dated" IQ test scores, "dating from well over a decade back to nearly thirty years," supported a finding that her "disorder began prior to her twenty-second birthday.")) but that she has does not have a qualifying IQ score nor does the record demonstrate significant deficits in adaptive functioning currently manifested by extreme limitation in one or marked limitation in two of the relevant areas of mental functioning (that is, in understanding, remembering, or applying information; in interacting with others; in concentration, persistence, or maintaining pace; or in adapting

or managing oneself) (*see id,* PageID. 74-75; *compare id. with id.,* PageID. 70-72).

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, and 12.11. In making this finding, the undersigned has considered whether the "paragraph B" criteria ("paragraph A or B" criteria of listing 12.05) are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has exhibited no more than a moderate level of difficulty stemming from her combined mental impairments. The claimant alleges significant issues with memory and comprehension. As discussed in the medical summary below, the undersigned considered a wide array of evidence sources, from historic educational records, to various treatment summaries, and even recurring consulting exams with standardized testing. Though the claimant has a history of intellectual deficit and appears to have some continuing problems with reading/writing, the bulk of the evidence does not presently support a marked rating. The undersigned was further persuaded by the long-term opinions and analyses from the State agency consultant, Dr. Davis, and NPs Dunn, Lee, and Tave. These assessments, and the evidence they relied upon, tended to show no more than moderate difficulties. The claimant has extensively admitted to effectively functioning as a stay-at-home parent, caretaker, and homemaker. She has done this for the majority of the record. Difficulties in doing so have come under good control with simple medication. Save notable examples discussed below, the claimant has generally exhibited normal memory and understanding. Until her accident, she drove her children safely and consistently (though she was usually unlicensed). When transported she can run errands. She can and does seek appropriate medical care. Generally, she can meet the daily needs of her well-populated home, cooking and cleaning (Hearing Testimony and Exhibits 1A, 4A, 5E, 9E, and 1F-16F).
>
> In interacting with others, the claimant has exhibited no more than a moderate level of difficulty stemming from her combined mental impairments. The claimant alleges serious issues interacting with others. However, the claimant's presentation during relevant treating events and consulting exams has been more nuanced. The claimant is often somewhat anxious or depressed. Despite her apparent intellectual impairment, she exhibits generally normal speech and vocabulary. She is

usually neutral in tone to even pleasant at times. She is always able to speak for herself. She does not presently require speech therapy. She is in infrequent counseling. Though she does not care to be in public, she is consistently able to attend her physical and mental treating events without a representative. Though she has exhibited seizure-like behavior of somewhat unclear etiology, she is nonetheless able to complete these treating events. She is able to live at home with her family, including her several children, husband, and mother. She interacts with these individuals. She was able to speak for herself in a normal manner at hearing. As above, the undersigned was also persuaded by the opinions and analyses from the State agency consultant, Dr. Davis, and the nurse practitioners (Hearing Testimony and Exhibits 1A, 4A, 5E, 9E, and 1F-16F).

With regard to concentrating, persisting or maintaining pace, the claimant has exhibited no more than a moderate level of difficulty stemming from her combined mental impairments. The claimant alleges difficulties in concentrating more than a short time. However, this was rarely noted as compromised during treating events. The only provider to suspect an attention related disorder was the LPC with the Juvenile Court, whose findings are generally unpersuasive as discussed below. While the claimant alleges intellectual difficulties and panic attacks, she continues to function as a stay-at-home parent and homemaker. She is able to consistently prepare meals. She can clean her home. She can look after her children. During treating events, she is consistently on topic. There is little sign of distractibility, confusion, or the need for a chaperone at these events. She is consistently able to completely discuss her symptoms, response to medication, and future needs. The undersigned was also persuaded by the opinion statements and analyses from the State agency and consulting examiners (Hearing Testimony and Exhibits 1A, 4A, 5E, 9E, and 1F-16F).

As for adapting or managing oneself, . . . the claimant has exhibited no more than a moderate level of difficulty stemming from her combined mental impairments. This area has been a domain of remarkable achievement for this claimant. This claimant does have a history of special education and apparent functional illiteracy. Still, she managed to spend the 2000s and 2010s as a stay at home parent *and* small business owner. Since onset, the claimant has mostly continued to function as a homemaker. In addition to caring for herself, she is able to provide meals, housekeeping, and caretaking for her husband and several children. She is able to keep herself well groomed. Due to lack of a consistent provider, she often runs out of medication but she does tend to take it when it is available. She consistently seeks appropriate medication, usually of her own accord. Insight and judgment as to her impairment is generally fair. She is able to attend her own treating events by herself. She is able to

9

converse with providers without help. While she alleges difficulty responding healthily to stress, she is generally able to control her seizures/panic attack-like spells with appropriate medication compliance (Hearing Testimony and Exhibits 1A, 4A, 5E, 9E, and 1F-16F).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria (criteria of listing 12.05) are not satisfied.

.   .   .

Turning back to listing 12.05, this listing is based on the three elements that characterize an intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22.

The undersigned notes the claimant made a request for a fully favorable decision on the record in October 2019. The claimant argued she met this listing (Exhibit 7B). The evidence as presently developed and fully considered does not fairly merit such a decision.

The required level of severity for this disorder is met when the requirements in paragraph A *or* B are satisfied.

.   .   .

Paragraph B is the claimant's area of focus. It requires the following:

    1. Significantly sub-average general intellectual functioning evidenced by a **or** b:

        a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; **or**

        b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; **and**

    2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

        a. Understand, remember, or apply information (see 12.00E1); or

>> b. Interact with others (see 12.00E2); or
>>
>> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>>
>> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met.

This test must be an individually administered standardized test of general intelligence. It must meet program requirements and have a mean of 100 and standard deviation of 15. It must be administered (or co-signed) by a qualified specialist. Such a person must be currently licensed or certified at the independent level of practice in the State where the test was performed. It must meet contemporary psychometric standards for validity, reliability, normative dat[a], and scope of measurement. While we generally presume an IQ score is an accurate reflection of your general functioning, we may reject such a position if the evidence in the record tells us otherwise. This can include prior or internally inconsistent scores, or information about your daily functioning. Our consultants with the State agency can also conclude your score is not an accurate reflection.

In this case, the claimant presented multiple highly dated scores, dating from well over a decade back to nearly thirty years, long preceding much of her work history. At the same time, this *does* tend to support the claimant's disorder began prior to her twenty-second birthday. Further, there is a more recent test administered by counselor Rice. The claimant scored a 68. This is discussed more below, but the results are partially suspect due to contemporaneous evidence of exaggeration from multiple other sources. This was a single meeting; the source was not informed of a substantial portion of the claimant's relevant history; the source did not know she had recently run a small business; the claimant was not in treatment or medicated; and the scores tended to be inconsistent with the claimant's apparent cognitive abilities demonstrated elsewhere.

However, even if the claimant's IQ scores were accepted, she would need to show significant deficits in 'adaptive functioning'. The claimant completed her tests decades ago in childhood during her education. On the other hand, 'adaptive functioning' refers to how you learn and use conceptual, social, and practical skills in dealing with common life demands. This is your typical functioning a[t] home and in the community, alone or among others. We are most interested in whether you do your

11

daily activities independently, appropriately, effectively, and on a sustained basis. If you receive help, we consider the kind, extent, and frequency of it. In other words, the claimant cannot be fairly gauged as a thirty-nine year old parent with a significant work history based primarily on her typical functioning as a child. Under 12.05B, we are not rating the claimant based on her dependence on others for personal needs. Here, we consider the record for evidence of marked (or extreme) limitations among the standards known as the "B" criteria.

While we may consider school records, we qualify that such evidence would tend to be more probative if you were in school recently.

The undersigned notes the claimant's completion of various functional forms (Exhibits 5E-6E and 8E). The undersigned was also fairly guided by the claimant's historic FSIQ scores of 94 in 1988 and 76 in 1991, [as] well as her repeated WRAT, WISC, and WAIS tests in recent years.

The undersigned noted Dr. Davis's repeated 2003 cognitive tests, plus the claimant's presentation, mental status exams, and admitted activities. The undersigned was persuaded by this source finding the claimant could probably perform simple unskilled work despite her intellectual/literacy challenges. The undersigned noted that the claimant had spent a decade as a small business owner between 2003 and filing. While the claimant had some trouble at work, there is little evidence she had to work in a supported setting, needed special supervision, had fewer duties, or took longer to learn her duties. This never appeared hindered by an inability to read, write, or comprehend. The undersigned also noted the claimant's own characterizations of the record that she was largely functional, consistent with and sometimes exceeding Dr. Davis's 2003 expectations, until her recent auto wreck. Despite her reported "seizure" events during recent care, the claimant appeared "okay" during recent treating events. She was consistently able to represent herself during these treating events, carrying on long and sometimes argumentative conversations with her providers. Mental status exams during this period were similarly persuasive, showing her to be exhibiting overall unremarkable features, despite the stress of the situation. There was no apparent intellectual problem. The undersigned was persuaded as to the claimant's presentation with NP[]s Lee and Tave over the past two years, each of whom noted she was concentrated on her panic disorder, and rarely on intellect. More problematically, these sources noted the claimant appeared capable of selectively providing and withholding information to suit her purposes. Consulting examiner NP Dunn also noticed this. The undersigned also considered whether the claimant's ability to adaptively function was compromised by a confluence of her intellectual disorder and her newer impairments. This does not appear to be the case, primarily because no source has provided a sound opinion to support such a point.

12

> The claimant has admitted her simple medication *works*, often immediately. This largely eliminates her other symptoms, so long as she takes it. Most recently, there appears to be no significant *intellectual* compromise of the claimant's ability to care for herself, care for her several children, keep her home, cook, and run errands when transported.

(Doc. 13, PageID. 70-72, 72-73 & 73-75) (emphasis in original).

Although the ALJ specifically determined that Brown does not have a qualifying IQ score (*see id.,* PageID. 74), this Court has no need to determine whether this finding is supported by substantial evidence because even if it is presumed that substantial evidence of record does not support this finding and Brown has proven that she has a qualifying IQ score, the Commissioner's decision denying Plaintiff is still due to be affirmed because the Plaintiff has failed to carry her burden of demonstrating that her intellectual disorder has caused significant deficits in adaptive functioning currently manifested by extreme limitation in one or marked limitation in two of the relevant areas of mental functioning (that is, in understanding, remembering, or applying information; in interacting with others; in concentration, persistence, or maintaining pace; or in adapting or managing oneself).

Brown focuses her attack on the ALJ's limitation findings in the mental functioning areas of (1) understanding, remembering, or applying information and (2) concentration, persistence, or maintaining pace. (*See* Doc. 14, PageID. 743 & 747). And because Plaintiff does not specifically address the mental functioning area of interacting with others (*see id.*), and only briefly mentions the area of adapting or managing oneself (*see id.,* PageID. 743) before ultimately arguing that the evidence supports a determination that she has "marked limitations in the areas of understanding, remembering, and applying information and in concentrating, persisting, and

13

maintaining pace[,]" (*id.,* PageID. 747), this Court obviously has no basis to find that the ALJ's findings of a moderate limitation in the areas of interacting with others and in adapting or managing oneself are not supported by substantial evidence or, more importantly, that Plaintiff has proven that the evidence of record establishes that her intellectual disorder has caused significant deficits in adaptive functioning currently manifested by an extreme or marked limitation in these two areas of mental functioning.

Turning attention to the other two areas of mental functioning, Plaintiff attacks the ALJ's references to Plaintiff running a "small business" and "effectively function[ing] as a stay-at-home parent, caretaker, and homemaker," arguing the evidence of record does not support these findings. (*See* Doc. 14, PageID. 747). Brown contends that she never testified that she ran a small business, only that she was a hair stylist and worked for herself for several years, and that the mere fact she was "psychologically evaluated at the request of the Mobile County Juvenile Court system . . . to gauge her ability to care for her children shows that she was not 'effectively' functioning as a stay-at-home parent." (*Id.,* citing Doc. 13, PageID. 392-95; *see also id.* ("Plaintiff was not sending her children to school and the Court system was afraid that her intellectual impairment prevented her from being able to care for her children.")).

While it is true that Brown never specifically testified that she ran a small business (*see* Doc. 13, PageID. 109), such a finding is supported by the evidence, given Plaintiff's admitted testimony that she worked for herself for several years as a hair stylist (*see id.*) and the evidence of record that Plaintiff operated April's Beauty Bar, 1907 Luckie Avenue, Mobile, Alabama 36617 (*id.,* PageID. 327; *see also id.,* PageID. 257-58 (self-employment earnings records)). And, again, while it is true that Brown was

psychologically evaluated in March of 2018 to "determine her level of functioning and treatment needs[]" because she was "not sending her children to school[,]" (Doc. 13, PageID. 392), the record fails to point out that a determination was ever made (by the Juvenile Court system or any individual examiner) that Plaintiff's intellectual impairment prevented her from being able to care for her children (*see generally* Doc. 13) and, indeed, the evaluation performed on March 14, 2018, stressed that "April takes great pride in being a good mother and caring for her husband and children. She focuses on her family and has neglected her own medical needs." (*Id.,* PageID. 394). Moreover, Brown's hearing testimony makes clear that the reason she was not sending her children to school had nothing to do with her intellectual impairment but everything to do with her fear that she would have a seizure-like attack while they were in school with no one to assist her with the attack (*see id.,* PageID. 110). Accordingly, this argument by Plaintiff does not convince the Court that the record wholly undermines the ALJ's finding that she was able to "effectively function as a stay-at-home parent, caretaker and homemaker" because, save for this single episode which was not brought about because of Plaintiff's intellectual disorder, the record does establish that Brown did effectively function as a stay-at-home parent, caretaker, and homemaker (*see, e.g., id.* PageID. 394 (in summarizing her March 14, 2018 evaluation of Plaintiff, Deborah B. Rice, MS, noted that Brown "takes great pride in being a good mother and caring for her husband and children[]" and that she "focuses on her family"); 522 (during his May 11, 2018 evaluation of Brown, Dr. Davis noted that Plaintiff spends her days at home taking care of her 4 children, performing all domestics of the home, and she has no difficulty with personal hygiene and she reported "no change in her ability to perform and enjoy

15

daily activities[]"); and 731 (on April 9, 2020, Brown admitted to a sedentary lifestyle but reported "she does a lot of cooking and cleaning")). Besides, the reasoning attacked by the Plaintiff does not constitute the whole of the ALJ's analysis; indeed, in finding a moderate limitation in each of these two areas of mental functioning, the ALJ prominently relied upon the mental RFC opinions/analyses of consultative examiner, Dr. John W. Davis, and non-examiners, Drs. Linda Duke and Joseph Garmon (*see id.,* PageID. 71 & 72)[4] and, as well, observed that, with a few notable exceptions, the record generally establishes that Plaintiff's memory and concentration were normal and not compromised (*id.,* PageID. 71 & 72).[5] And, finally, Plaintiff's attack ignores that the burden is hers to demonstrate that the record shows significant deficits in adaptive functioning currently manifested by extreme limitation in one or marked limitation in two of the relevant areas of mental functioning, and she has not shown (by citation to specific record evidence) significant deficits in adaptive functioning currently manifested by marked limitation in understanding, remembering, or applying information and concentration, persistence, or maintaining pace. All plaintiff has done in her brief is

---

[4]   The opinions of Drs .Davis, Duke, and Garmon support these moderate limitations. (*See id.,* PageID. 131-38, 149-50, 154-56 & 520-25).

[5]   The ALJ's finding in this regard is also correct (*see, e.g., id.,* PageID. 537-38 (on July 21, 2018, Plaintiff's memory, concentration and attention appeared to be intact); 544 (on May 1, 2018, Plaintiff's memory, concentration and attention appeared to be intact); 550 & 558 (on November 12, 2018,one examiner noted  Plaintiff's memory, concentration and attention appeared to be intact, while another examiner described her memory as unimpaired and noted no impairment in concentration); 613 & 619  (on April 26, 2019, one examiner noted Plaintiff's memory, concentration and attention appeared to be intact, while another examiner found her memory unimpaired);  693 (on January 9, 2020, Plaintiff's memory, concentration and attention appeared to be intact); and 733 & 739 (on April 9, 2020, one examiner noted  Plaintiff's memory, concentration and attention appeared to be intact, while another examiner described her memory as unimpaired and noted no impairment in concentration)) and provides but further support for the moderate limitations found with respect to these two areas of mental functioning.

16

conclusory argue (as opposed to demonstrating though citation to specific evidence of record) that she "has marked limitations in the areas of understanding, remembering, and applying information and in concentrating, persisting, and maintaining pace." (Doc. 14, PageID. 747). This conclusory argument is simply not sufficient to carry her burden at the third step of the Commissioner's sequential evaluation process. *See Frame, supra,* 596 Fed.Appx. at 910.[6]

Because Plaintiff has not demonstrated that her intellectual disorder meets or medically equals Listing 12.05B, and she raises no issues directed to the fourth and fifth steps of the Commissioner's sequential evaluation process, the Commissioner's fifth-step determination denying benefits is due to be affirmed.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 30th day of November, 2021.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**

---

[6] To the extent Plaintiff would point to the mental RFC questionnaire completed by Deborah Rice on June 27, 2019 as evidence supportive of a determination that she has marked limitations in areas of understanding, remembering, and applying information and in concentrating, persisting, and maintaining pace (*see* Doc. 13, PageID. 631-32), the Court finds her reliance on this evidence misplaced. To be sure, Ms. Rice did indicate such marked limitations (*id.,* PageID. 631); however, as the ALJ indicated in her decision, Ms. Rice's opinion is not persuasive because it was given (that is, the form was completed) more than a year after her sole examination of Plaintiff (*compare id. with id.,* PageID. 392 & 395 (test date noted as March 14, 2018 and evaluation was signed March 15, 2018)). Without a contemporaneous examination of Plaintiff to accompany her mental RFC, it is impossible for this Court to find that Ms. Rice could appropriately rate the severity of Plaintiff's limitations in the areas of functioning relevant to Listing 12.05B.